1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  KRIS K., | Case No.: 3:20-cv-00515-RBM |
| 12                              Plaintiff, | **ORDER GRANTING PLAINTIFF'S** |
| 13  v. | **APPLICATION TO PROCEED IN** |
| 14  ANDREW M. SAUL, COMMISSIONER | **DISTRICT COURT WITHOUT** |
|      OF SOCIAL SECURITY, | **PREPAYING FEES OR COSTS** |
| 15 | |
| 16                              Defendant. | **[Doc. 2]** |
| 17 | |

18
19

## I.     INTRODUCTION

20          On March 19, 2020, Plaintiff Kris K. ("Plaintiff"), appearing pro se, filed a

21   complaint under 42 U.S.C. §§ 405(g) and 433 seeking judicial review of the Commissioner

22   of the Social Security Administration's ("Defendant" or "Commissioner" or "SSA") final

23   decision denying Plaintiff's retirement and survivor insurance benefits ("RSI") under Title

24   II of the Social Security Act ("the Act").  (*See* Doc. 1.)  Plaintiff did not pay the required

25   filing fee and instead filed a motion to proceed in forma pauperis ("IFP Motion").  (Doc.

26   2.)

27          On April 8, 2020, Chief Judge Larry A. Burns issued an order staying civil cases

28   arising under 42 U.S.C. § 405(g) filed on or after March 1, 2020, due to the ongoing

COVID-19 public health emergency. *See* Or. of Chief Judge No. 21, sec. 6 (stating in part "all civil cases filed on or after March 1, 2020 brought against the Commissioner . . . are hereby stayed, unless otherwise ordered by the [Court]."). Initially, the Court held its ruling on the IFP Motion in abeyance pursuant to the Chief Judge Order. But, the COVID-19 pandemic has been ongoing for months and will continue for the foreseeable future. At this time, the Court lifts the stay of this case for the limited purpose of ruling on the IFP Motion which will allow Plaintiff to proceed with effectuating service of the summons and complaint to Defendant. Once service is complete, the stay will be re-enacted until such time as the Commissioner begins normal operations at the Office of Appellate Hearings Operations and resumes preparation of certified administrative records. *See* Or. of Chief Judge No. 21 at sec. 6.

Having reviewed the complaint and IFP Motion, the Court **GRANTS** Plaintiff's motion and further finds that Plaintiff's complaint is sufficient to survive a sua sponte screening.

## II.   DISCUSSION

### A.   Application to Proceed IFP

All parties instituting a civil action in a district court of the United States, except an application for a writ of habeas corpus, must pay a filing fee. 28 U.S.C. § 1914(a). But a litigant who, because of indigency, is unable to pay the required fees or security may petition the Court to proceed without making such payment. 28 U.S.C. § 1915(a)(1). The facts of an affidavit of poverty must be stated with some particularity, definiteness, and certainty. *Escobedo v. Applebees*, 787 F.3d 1226, 1235 (9th Cir. 2015) (citing *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir.1984)).

The determination of indigency falls within the district court's discretion. *Rowland v. Cal. Men's Colony*, 939 F.2d 854, 858 (9th Cir. 1991), *rev'd on other grounds*, 506 U.S. 194 (1993). "[T]here is no formula set forth by statute, regulation, or case law to determine when someone is poor enough to earn IFP status." *Escobedo*, 787 F.3d at1235. It is well-settled that a party need not be completely destitute to proceed in forma pauperis. *Adkins*

*v. E.I. DuPonte de Nemours & Co.*, 335 U.S. 331, 339-40 (1948); *see also Escobedo*, 787 F.3d at 1235.  To satisfy the requirements of 28 U.S.C. § 1915(a)(1), "an affidavit [of poverty] is sufficient which states that one cannot because of his poverty pay or give security for costs . . . and still be able to provide[] himself and dependents with the necessities of life." *Adkins*, 335 U.S. at 339 (internal quotations omitted).  Nevertheless, "the same even-handed care must be employed to assure that federal funds are not squandered to underwrite, at public expense, . . . the remonstrances of a suitor who is financially able, in whole or in material part, to pull his own oar." *Temple v. Ellerthorpe*, 586 F. Supp. 848, 850 (D. R.I. 1984) (internal citation omitted).  In making this determination, courts may consider plaintiff's access to other assets, including spousal income, when appropriate. *Escobedo*, 787 F.3d at 1236.  Courts tend to reject IFP motions where the applicant can pay the filing fee with acceptable sacrifice to other expenses. *See, e.g., Allen v. Kelley*, C-91-1635-VRW, 1995 WL 396860, at **2-3 (N.D. Cal. June 29, 1995) (Plaintiff initially permitted to proceed IFP, but later required to pay $120 filing fee out of $900 settlement proceeds); *but see Michael F. v. Saul*, 20-cv-00524-AHG, Doc. 4 (S.D. Cal. Apr. 9, 2020) (granting IFP where plaintiff's income was $1,446 per month, expenses were $1,300 per month, and he had $620 in checking and savings accounts, $11,000 in a retirement account, and $9,000 in a certificate of deposit account); *Kevin C. v. Saul*, 20-cv-00463-RBM, Doc. 9 (S.D. Cal. Sept. 2, 2020) (granting IFP where plaintiff's monthly income was $0, savings were $0, and plaintiff's spouse's monthly income was $2,440, expenses were $4,204, and had $510 in savings).

Here, Plaintiff has sufficiently demonstrated his entitlement to IFP status.  According to his affidavit, Plaintiff has been "self[employed]/retired" for the last two years. (Doc. 2 at 2.)  His monthly income is $845, which is comprised of $695 from retirement and $150 from self-employment. (*Id.* at 1-2.)  Plaintiff's monthly expenses are $680, which comprise of $400 for rent, $150 in food, $40 for credit card payments, $30 for utilities, $30 in transportation, and $30 in other expenses. (*Id.* at 4-5.)  While Plaintiff's spouse's average monthly income for the past twelve months was $2,200, Plaintiff

3

anticipates his spouse's income to be $1,700 the next month. (*Id.* at 1-2.) Additionally, as of March 19, 2020, Plaintiff states his spouse's income may be cut due to the COVID-19 pandemic because his spouse's employer closed all stores for two weeks. (*Id.* at 5.) The spouse's monthly expenses are $1,682, which comprise of $969 for rent, $360 in motor vehicle and credit card payments, $200 for food, $78 for insurance, and $75 in other expenses. (*Id.* at 4-5.) Aside from owning a vehicle valued at $3,500, Plaintiff and his spouse own no other assets. (*Id.* at 3.) Plaintiff has $195 in checking accounts; Plaintiff's spouse has $0 in bank accounts; and Plaintiff and his spouse have $75 in cash. (*Id.* at 2.)

Plaintiff's affidavit sufficiently demonstrated that he is unable to pay the required $400 filing fee without sacrificing the necessities of life. *See Adkins*, 335 U.S. at 339-40. Considering Plaintiff's and his spouse's anticipated income of $2,395 and expenses of $2,362, Plaintiff has $33 in available income. (Doc. 1 at 1-2, 4-5.) Taking this $33 in available income with Plaintiff's savings and available cash of $270 amounts to $303 in Plaintiff's total available funds. (*Id.*) The $400 filing fee is nearly 132% of Plaintiff's $303 available funds. The Court concludes Plaintiff cannot afford to pay any filing fees at this time for this action. Accordingly, Plaintiff's IFP Motion is **GRANTED**.

### B.     Sua Sponte Screening

Pursuant to 28 U.S.C. § 1915(a), a complaint filed by any person proceeding IFP is also subject to a mandatory sua sponte screening. The Court must review and dismiss any complaint which is frivolous or malicious, fails to state a claim, or seeks monetary relief from a defendant who is immune. 28 U.S.C. § 1915(e)(2); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *see also Alamar v. Soc. Sec.*, 19-cv-0291-GPC-LL, 2019 WL1258846, at *3 (S.D. Cal. Mar. 19, 2019).

This is not the standard SSA appeal, where Plaintiff appeals a disability determination. Liberally construing Plaintiff's complaint, Plaintiff is appealing the Administrative Law Judge's ("ALJ") decision as to the totalization of his Canadian work credits with his U.S. work credits under Title II of the Act. (*See* Doc. 1. at 2-3); *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) (courts liberally construe pro se litigants'

4

filings, relieving them from "strict application of procedural rules and demands . . . ."). Before conducting the sua sponte screening, the undersigned finds the Court has jurisdiction over Plaintiff's claim for the reasons discussed below.

*i.   Federal Court Review of Retirement Benefits Appeals*

Title II of the Act is administered by the SSA, and it appears in 42 U.S.C. §§ 401-433, subchapter II, chapter 7, Title 42. Under Title II, "[t]he Commissioner . . . is directed to making findings of fact, and decisions as to the rights of any individual applying for a payment under [subchapter II]." *See* 42 U.S.C. § 405(b)(1). Also within this title is 42 U.S.C. § 433, where the President is authorized to enter into agreements establishing totalization arrangements between this country's social security system and the social security system of any foreign county. Such agreement has been entered between the United States and Canada. *See generally* Agreement Between the Government of Canada and the Government of the United States of America with Respect to Social Security, U.S.-Can., Mar. 11, 1981, E102189 – CTS 1984 No. 38; *see* 42 U.S.C. § 433; *see also* 20 C.F.R. § 404.1918.

For the United States, the totalization agreement covers Social Security taxes and Social Security retirement, disability, and survivors insurance benefits. *See generally* Agreement Between the United States and Canada. The computation of the U.S. Benefit under the agreement is explained as follows:

> [w]hen a U.S. benefit becomes payable as a result of counting both U.S. and Canadian Social Security credits, an initial benefit is determined based upon the [applicant's] U.S. earnings as if [his or her] entire career had been completed under the U.S. system. This initial benefit is then reduced to reflect the fact that Canadian credits helped to make the benefit payable. The amount of this reduction will depend on the number of U.S. credits: the more U.S. credits, the smaller the reduction; and the fewer U.S. credits, the larger the reduction.

*Id.* at 9. If the applicant disagrees with the decision made on his or her claim for benefits under the agreement, it may be appealed. *Id.* at 11. Judicial review of such decisions is governed by 42 U.S.C. § 405(g) which provides, in part, "[a]ny individual, after *any* final

1  decision of the Commissioner of Social Security made after a hearing to which he was a

2  party . . . may obtain a review of such civil action . . . [s]uch action shall be brought in the

3  district court . . . for the judicial district in which the plaintiff resides . . . ."   (emphasis

4  added).

5        The Code of Federal Regulations governing totalization agreements also confirm the

6  availability of judicial review.  *See* 20 C.F.R. §§ 404.1901-1930.  Notably, 20 C.F.R. §

7  404.1927(b) authorizes "a request for reconsideration, hearing, or Appeals Council review

8  of a determination made by SSA resulting from a claim filed under [a] [totalization]

9  agreement . . . ."  An appeal under 20 C.F.R. § 404.1927(b) is subject to the provisions in

10  subpart J, part 404, chapter III, Title 20 which outlines the procedures to follow in

11  determining a claimant's rights under Title II of the Act and the administrative review

12  process.    20 C.F.R. § 404.900;  *see generally* 20 C.F.R. §§ 404.900-999d.    The

13  administrative review process consists of several steps, allowing for an initial

14  determination, reconsideration, an ALJ hearing, Appeals Council review, and federal court

15  review. *See* 20 C.F.R. § 404.900(a)(5).

16        Here, Plaintiff's claim falls squarely within the broad language of 42 U.S.C. §

17  405(g).  Plaintiff alleges he had a hearing with an ALJ, and the ALJ denied his application

18  for benefits.  (Doc. 1 at 2.)  He alleges he received an order from the Appeals Council

19  denying his request for review.  (*Id.*)  This became the Commissioner's final decision.  *See*

20  20 C.F.R. § 404.900(a)(4).   Liberally construing Plaintiff's complaint, it appears he

21  completed all steps in the administrative review process. *See* 20 C.F.R. § 404.900(a)(5).

22  Plaintiff now challenges the Commissioner's decision in the judicial district in which he

23  resides pursuant to 42 U.S.C. § 405(g). (Doc. 1 at 1-3, 5); *see also* 20 C.F.R. § 404.1927(b);

24  20 C.F.R. § 404.900(a)(5).  As such, the Court has jurisdiction to review this appeal at this

25  stage.

26  / / /

27  / / /

28  / / /

6

1.  <u>Magistrate Judge Jurisdiction</u>

In addition to the applicability of judicial review, this is also a case where Plaintiff granted his full consent to the undersigned's authority to conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings.  (Doc. 4.)

Magistrate judge jurisdiction is outlined generally in 28 U.S.C. § 636.  Under 28 U.S.C. § 636(c), "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a . . . civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court . . . [s]he serves."  This District has specifically designated such jurisdiction to full-time magistrate judges when both parties consent in writing.  *See* CivLR 72.1(g) (stating "[u]pon the written consent of the parties, a full-time magistrate judge may conduct any or all proceedings in any civil case which is filed in this court, . . . and may order the entry of a final judgment, in accordance with 28 U.S.C. § 636(c).").  For Social Security appeals filed in this district pursuant to 42 U.S.C. § 405(g), the United States has given general consent to magistrate judge jurisdiction.  *See* Gen. Or. 707 at 1 (Apr. 12, 2019) (stating, "[a]ll cases in which a plaintiff seeks review, [under] 42 U.S.C. § 405(g), of a decision by the Commissioner . . . will be randomly assigned to a Magistrate Judge . . . .").  In cases of this nature, "[t]he United States has informed the Court of its general consent to Magistrate Judge Jurisdiction . . . subject to a reservation of the right to withdraw the consent in unusual cases, and a reservation of the right to withdraw its general consent in the future."  Gen. Or. 707 at 1.

At this time, the undersigned has jurisdiction to decide this case because it involves judicial review of a determination of benefits under 42 U.S.C. § 405(g).  *See* 28 U.S.C. § 636(c); CivLR 72.1(g); Gen. Or. 707; Doc. 4.  Given that Plaintiff's appeal is subject to judicial review and the undersigned's jurisdiction, the Court will proceed to a sua sponte screening of the complaint.

/ / /

/ / /

7

1

      *ii.  Complaint Survives Sua Sponte Screening*

2         To survive sua sponte screening, complaints must contain "a short and plain

3    statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

4    "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,'

5    but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-

6    accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

7    *Twombly*, 550 U.S. 544, 555 (2007)). And "[t]hreadbare recitals of elements of a cause of

8    action, supported by mere conclusory statements do not suffice." *Id.* Instead, plaintiff

9    must state a claim plausible on its face, meaning "plaintiff pleads factual content that allows

10    the court to draw the reasonable inference that the defendant is liable for the misconduct

11    alleged." *Id.* "When there are well-pleaded factual allegations, a court should assume their

12    veracity, and then determine whether they plausibly give rise to an entitlement to relief."

13    *Id.* at 679.

14         Social security appeals are not exempt from the general screening requirements for

15    IFP cases. *Montoya v. Colvin*, 16-cv-00454-RFB-NJK, 2016 WL 890922, at *2 (D. Nev.

16    Mar. 8, 2016) (citing *Hoagland v. Astrue*, 12-cv-00973-SMS, 2012 WL 2521753, at *1

17    (E.D. Cal. June 28, 2012)).

18         In social security appeals, courts within the Ninth Circuit have established four

19    elements necessary for a complaint to survive a sua sponte screening:

20

        First, the plaintiff must establish that she had exhausted her administrative remedies

21       pursuant to 42 U.S.C. § 405(g), and that the civil action was commenced within sixty

       days after notice of a final decision.  Second, the complaint must indicate the judicial

22       district in which the plaintiff resides.  Third, the complaint must state the nature of

23       the plaintiff's disability and when the plaintiff claims she became disabled.  Fourth,

       the complaint must contain a plain, short, and concise statement identifying the

24       nature of the plaintiff's disagreement with the determination made by the Social

       Security Administration and show that the plaintiff is entitled to relief.

25

26    *Skylar v. Saul*, 19-cv-1581-NLS, 2019 WL 4039650, at *1 (S.D. Cal. Aug. 27, 2019)

27    (quoting *Montoya*, 2016 WL 890922 at *2).

28    / / /

1    As to element four, a complaint is insufficient if it merely alleges the Commissioner
2  was wrong in denying plaintiff benefits. *See Skylar*, 2019 WL 4039650, at *1; *see also*
3  *Hoagland*, 2012 WL 2521753, at *3. Instead, a complaint "must set forth a brief statement
4  of facts setting forth the reasons why the Commissioner's decision was wrong." *Skylar*,
5  2019 WL 4039650, at *2.

6    As to the first two screening requirements, they appear to apply to all SSA cases.
7  *See Bass v. Soc. Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989). Plaintiff satisfies the first
8  two requirements. As to the first requirement, the complaint contains sufficient allegations
9  that Plaintiff exhausted his administrative remedies. Plaintiff filed an application for Social
10 Security retirement benefits which was denied. (*See* Doc. 1 at 2.) An ALJ held a hearing
11 and issued a decision denying Plaintiff's claim for benefits. (*Id.* at 2.) Plaintiff filed a
12 request for review, and the Appeals Council denied it. (*Id.*) Plaintiff filed the complaint
13 within sixty days after the Commissioner mailed Plaintiff notice of the SSA's final decision
14 plus five days for mailing. (*See* Doc. 1 at 2); *see also* 20 C.F.R. §§ 404.901, 404.981; *see*
15 *also Szilagyi v. Berryhill*, 690 F. App'x 1003, 1004 (9th Cir. 2017). As to the second
16 requirement, the complaint states Plaintiff resides in San Diego County. (Doc. 1 at 1; Doc.
17 1-1 at 1.)

18    As to the third and fourth requirements, courts have applied them consistent with
19 *Parker v. Astrue*. 12-cv-01152-LDG-PAL, 2012 WL 3135703, at *2 (D. Nev. Aug. 1,
20 2012). In *Parker*, the plaintiff explicitly alleged disability. *Id.* But here, Plaintiff claims
21 neither disability nor entitlement to disability insurance benefits. (Doc. 1 at 2.) Instead,
22 he alleges entitlement to retirement benefits under the Totalization Agreement Between the
23 United States and Canada. (Doc. 1 at 2-3); *See generally* Agreement Between the United
24 States and Canada; *see* 42 U.S.C. § 433; *see also* 20 C.F.R. § 404.1918. Arguably,
25 requirement three is inapplicable because Plaintiff is not alleging disability. But even
26 assuming *arguendo* the third requirement applies, it can generally be construed as requiring
27 a plaintiff to explain how and when he became entitled to benefits. Plaintiff's complaint
28 meets this requirement by explaining Plaintiff's entitlement to retirement benefits in 2016

1   by totalization of his Canadian and U.S. work credits.  (Doc. 1 at 2.)  Plaintiff's claim is

2   alleged with such specificity to allow the Court to determine when and how Plaintiff is

3   plausibly entitled to relief.  *See Iqbal*, 556 U.S. at 679; *see also Lenz v. Colvin*, 16-cv-1755,

4   2016 WL 5682557, at *2 (S.D. Cal. Oct. 3, 2016) (stating "[i]n social security appeals, a

5   complaint challenging the denial of benefits 'must provide a statement identifying the basis

6   of the plaintiff's disagreement with the [ALJ]'s determination and must make a showing

7   that the plaintiff is entitled to relief.'") (citation omitted).  This is sufficient to satisfy the

8   "low threshold" for surviving screening requirements.  *See Wilhelm v. Rotman*, 680 F.3d

9   1113, 1123 (9th Cir. 2012).  And as to the fourth requirement, the complaint alleges a short

10  plain statement identifying the nature of Plaintiff's disagreement with the SSA decision.

11  The complaint alleges the ALJ and/or Appeals Officer misunderstood the nature of his

12  claim and also failed to consider material evidence, including Plaintiff's "letter of evidence

13  dated October 10, 2019 . . . ."  (Doc. 1 at 2-3.)

14          Based upon all of the foregoing, the Court finds Plaintiff has presented a claim

15  sufficient to survive a sua sponte screening.  Plaintiff is cautioned, however, that "the sua

16  sponte screening and dismissal procedure is cumulative of, and not a substitute for, any

17  subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring."  *Teahan v.*

18  *Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

19                              **III.   CONCLUSION**

20          Accordingly, **IT IS HEREBY ORDERED**:

21          1.   Plaintiff's IFP Motion is **GRANTED**.

22          2.   The Clerk of Court is **DIRECTED** to issue a summons as to Plaintiff's

23  complaint and forward it to Plaintiff along with a blank U.S. Marshals Form 285 for the

24  named Defendant.  In addition, the Clerk of Court is **DIRECTED** to provide Plaintiff with

25  certified copies of this Order and the complaint.

26          3.   Upon receipt of these materials, Plaintiff is **DIRECTED** to complete Form

27  285 and forward the materials to the United States Marshals Service.

28  / / /

1      4.    Upon receipt, the United States Marshals Service is **ORDERED** to serve a

2  copy of the Complaint and summons upon Defendant as directed by Plaintiff on Form 285.

3  The United States will advance all costs of service. *See* 28 U.S.C. § 1915(d); FED. R. CIV.

4  P. 4(c)(3).

5      5.    After service is complete, the Court will stay the case again and the stay will

6  automatically lift after Defendant files the certified administrative record.

7      **IT IS SO ORDERED**.

8  Dated:  October 15, 2020

9

10            HON. RUTH BERMUDEZ MONTENEGRO

11            UNITED STATES MAGISTRATE JUDGE

11